IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | )   2:12-cr-00224-1 |
| CURTIS DELAY BROWN, | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Curtis Delay Brown's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i), seeking a sentence reduction to time served based on extraordinary and compelling circumstances. Because the Court concludes that Mr. Brown's motion does not present an extraordinary and compelling reason warranting a sentencing reduction, Mr. Brown's Motion to Reduce Sentence (ECF No. 289), is **DENIED** without prejudice.

I.  **BACKGROUND**

In August 2012, a federal grand jury returned a one-count indictment charging Curtis Delay Brown with unlawfully possessing a firearm under 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 19.) Mr. Brown took his case to trial and a jury found him guilty. (ECF No. 97.) After sentencing, Mr. Brown directly appealed his conviction claiming that the district judge incorrectly admitted prejudicial prior acts evidence under Federal Rule of Evidence 404(b). During that appeal, the United States confessed error, leading the Third Circuit to vacate Mr. Brown's conviction. (ECF No. 136.) On remand, Mr. Brown again took his case to a jury. On May 20, 2015, as in Mr. Brown's first trial, the second jury returned a guilty verdict. (ECF No. 169.) Mr. Brown's criminal record

1

included convictions that made him eligible for an enhanced sentence under the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e). As a result, on July 2, 2020, the Court then sentenced Mr. Brown to 180 months of imprisonment—the mandatory minimum under § 924(e)—followed by two (2) years of supervised release. (ECF No. 182.) The Third Circuit later affirmed Mr. Brown's conviction and sentence. (ECF Nos. 198 and 199.) After his conviction became final, Mr. Brown timely moved to vacate his conviction under 28 U.S.C. § 2255. (ECF No. 221.) This Court denied Mr. Brown's § 2255 motion in March 2020. (ECF Nos. 279 and 280.)

Mr. Brown now moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) due to the coronavirus pandemic. (ECF No. 289.) The United States filed a response opposing Mr. Brown's motion. (ECF No. 294.) Since filing his initial motion, Mr. Brown has filed several notices of supplemental information, primarily to inform the Court of additional inmates who have tested positive for COVID-19 at Mr. Brown's facility. (ECF Nos. 292; 293; 295; 299; 302; and 304.) The Court held telephonic oral argument on Mr. Brown's motion. (ECF No. 303.) With that, Mr. Brown's motion is ripe for decision.

## II.   **DISCUSSION**

Unless a statute provides specific authorization, "[a] federal court generally may not modify a term of imprisonment once it has been imposed." *Dillon v. United States*, 560 U.S. 817, 819 (2010). The First Step Act's amendment to 18 U.S.C. § 3582 provides one such authorization. As amended, § 3582 permits a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582 guides the court's discretion by requiring the court to consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a), to the extent they apply; and (3) whether a reduction is consistent with the

Sentencing Commission's Policy Statement in § 1B1.13 of the Sentencing Guidelines. *Id.*

As the Court will explain, the record does not present any extraordinary and compelling reasons for the Court to reduce Mr. Brown's sentence.

A. **Administrative Exhaustion**

To begin, the Court must determine whether Mr. Brown fulfilled § 3582(c)(1)(A)'s exhaustion requirement. Before the First Step Act became law, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act, however, amended § 3582 to permit an inmate to file a motion in federal court seeking compassionate release, but only after fully exhausting "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). Put another way, an inmate must first file a request for compassionate release with the warden of his BOP facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date he filed his initial request with the BOP warden.

Here, Mr. Brown is currently held at the Northeastern Ohio Correctional Center ("NEOCC"), which is not a BOP facility. So there is no BOP warden at his facility to who Mr. Brown could submit his sentence reduction request. The United States concedes that Mr. "Brown does not have access to BOP administrative remedies so that requirement does not apply here." (ECF No. 294, at 2.) And Mr. Brown took the precautionary step of submitting his sentencing reduction request to the BOP's "Designation, Sentence, Computation and Policy Correspondence Office" in Texas, as well as a centralized BOP email address. (ECF No. 289, at 11.)

Some courts treat inmates in Mr. Brown's situation—inmates housed in a non-BOP facility—as exempt from § 3582's exhaustion requirement. *See, e.g., United States v. Carver*, ---

3

F. Supp. 3d. ---, 2020 WL 1892340, at *2 (E.D. Wash. Apr. 8, 2020). And in many such instances, the United States waives the exhaustion issue to proceed to the merits. *See, e.g.*, *United States v. Sanchez*, No. 18-cr-833, 2020 WL 2787654, at *3 (S.D.N.Y. May 29, 2020). The latter scenario happened here, since the United States, noting Mr. Brown's current non-BOP designation, did not contest whether he properly exhausted his administrative appeals. Further, the record demonstrates that Mr. Brown nonetheless did the best he could in the circumstances—making two (2) submissions to relevant BOP recipients at the BOP's Inmate Classification Center and to a central BOP office. There are no further or different "exhaustion" steps that he can take, and all parties recognize that. So the Court can and will proceed to the merits of Mr. Brown's motion.

### B. "Extraordinary and Compelling" Reasons

The Court's next step is to determine whether Mr. Brown's motion presents an "extraordinary and compelling" reason that warrants release under § 3582(c)(1)(A)(i). While the relevant portions of the Sentencing Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they do provide some benchmarks for the Court's consideration. The applicable Policy Statement, found in § 1B1.13 of the Sentencing Guidelines, identifies two (2) types of medical conditions that can rise to an "extraordinary and compelling" level. The first are terminal illnesses. The second are non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment. In addition, the application notes to § 1B1.13 provide a catchall provision for finding extraordinary and compelling circumstances based on "other reasons."

#### 1. Terminal Illnesses

In order for relief to be warranted under the "terminal illness" option, a court must find that:

>   the defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

U.S.S.G. § 1B1.13 cmt. n.(1)(A)(i). Here, Mr. Brown has not claimed any terminal illness. So, on its face, his motion fails to implicate this portion of § 1B1.13.

### 2. <u>Non-Terminal Illnesses</u>

Mr. Brown points the Court to his longstanding latent Tuberculosis ("TB") diagnosis. The Court, however, concludes that Mr. Brown's latent TB does not at this time present an extraordinary and compelling reason for release. Under the applicable Policy Statement, a defendant's non-terminal medical condition may constitute an extraordinary and compelling reason if "a defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.(1)(A)(ii).

Mr. Brown's medical records show that his latent TB diagnosis originated in the early 1990s. (ECF No. 290.) During his annual TB screenings at NEOCC, Mr. Brown has remained asymptomatic for TB. (*Id.*) And although he has not yet had his 2020 TB screening, nothing in the record suggests that his asymptomatic TB status has changed in any way. Nor does Mr. Brown's motion suggest that his latent TB substantially diminishes his ability to provide self-care within NEOCC. Thus, Mr. Brown's latent TB, by itself, does not rise to an extraordinary and compelling reason for release.

Likewise, considering Mr. Brown's latent TB in combination with the ongoing COVID-19 pandemic, the Court is unable to find that such combination of concerns warrants release. In *United*

*States v. Raia*, the Third Circuit held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." 954 F.3d 594, 597 (3d Cir. 2020). In other words, a defendant's motion for compassionate release based in part on COVID-19-related concerns must move beyond "citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak." *United States v. Graham*, No. 12-cr-184, 2020 WL 3053106, at *4 (W.D. La. June 8, 2020).

What's more, latent TB is not on the Center for Disease Control's ("CDC") list of conditions that put an individual at an increased risk of severe illness from COVID-19. *See* Ctr. for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020). Nor is latent TB a condition on the CDC's list of conditions that *might* cause an increased risk for severe illness from COVID-19. *Id.* As a result, Mr. Brown's latent TB by itself and in combination with the coronavirus pandemic is insufficient to establish an extraordinary and compelling reason for release under the non-terminal illness portion of § 1B1.13.

3. **"Other Reasons"—§ 1B1.13 Catchall Provision**

Application Note 1(D) to § 1B1.13 provides a sort of catchall provision when finding an extraordinary and compelling reason for release. The application note states: "Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the" defendant's medical conditions, age, or family circumstances. U.S.S.G. § 1B1.13 cmt. n.(1)(D).

6

Mr. Brown makes three (3) arguments for finding an extraordinary and compelling reason for sentence reduction based on the catchall provision in § 1B1.13's application notes. First, he argues that his exemplary conduct while on pretrial release and during his incarceration warrant a sentencing reduction. (ECF No. 289, at 25–32.) Second, Mr. Brown argues that the Supreme Court's decision in *Rehaif v. United States*, while not retroactive, should provide an "other reason" for equitably reducing his sentence. (*Id.* at 32–37.) Third, he argues that the Court should apply a variant of the approach some courts have taken to remedy inequitable stacked sentences for certain convictions under 18 U.S.C. § 924(c), to his conviction under 18 U.S.C. §§ 922(g)(1) and 924(e). (ECF No. 289, at 38–42.)

As a threshold matter, the United States argues that the catchall provision in Application Note 1(D) only permits the Director of the Bureau of Prisons to determine "other reasons," not the courts. (ECF No. 294, at 11.) The United States bases this argument on the plain text of the application note which includes the preface: "As determined by the Director of the Bureau of Prisons . . . ." U.S.S.G. § 1B1.13 cmt. n.(1)(D). And some courts that have addressed the issue agree that Application Note 1(D) only provides an outlet for BOP, not courts. *See, e.g., United States v. Girod*, No. 15-cr-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP."). Yet others, as Mr. Brown points out, have held that the First Step Act permits courts to consider "other reasons" too. *See United States v. Maumau*, No. 2:08-cr-00758, 2020 WL 806121, at *2 (D. Utah Feb. 18, 2020). Here, the Court does not need to make a conclusive decision on the question of whether Application Note 1(D) only applies to the BOP, since in any event, Mr. Brown's proposed "other reasons" do not amount to extraordinary and compelling reasons that in

this Court's judgment would permit the Court to conclude that a reduced sentence is authorized.[1]

Mr. Brown's first basis for an "other reason" justifying a reduced sentence is his remarkable rehabilitation while in custody. The record is absolutely clear: Mr. Brown has been a model inmate and leader in prison programming, he has taken advantage of every rehabilitative program offered at NEOCC, and he has made a successful, genuine, and commendable effort to better himself. (ECF No. No. 289, at 25–32.) His record of achievements while at NEOCC is truly exemplary.[2] (*Id.* at 29–31.) But Application Note 3 to § 1B1.13 states that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.(3). While the Sentencing Guidelines are advisory, 28 U.S.C. § 994(t)'s instruction that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" is Congress' statutory direction. That is not advisory. And because Mr. Brown's other arguments for finding an "other reason" for release do not have a sufficient basis in law for this Court to reduce his sentence now, they do not combine with or go above and beyond his rehabilitation to provide an extraordinary and compelling reason to reduce his sentence.

Mr. Brown's second proposed "other reason" under Application Note 1(D) relies on the

---

[1] The Court will note, however, that Mr. Brown's briefing points to a growing consensus that use of Application Note 1(D) is not limited to the Director of the Bureau of Prisons, but rather extends to courts as well. *See, e.g.*, *Maumau*, 2020 WL 806121 at *3; *United States v. Jackson*, No. 08-cr-20150, 2020 WL 2812764 at *3 (D. Kan. May 29, 2020).

[2] These are not simply passing observations. The Court heard and observed Mr. Brown in Court, and has carefully reviewed the record in this case (including the temporal distance of Mr. Brown's prior convictions and his honorable military service). It has reviewed and considered the record of his interactions with the previously assigned (now retired) trial judge, who had placed Mr. Brown on bond at every opportunity he had to do so, including post-conviction (ECF No. 193, at 8; ECF No. 297, at 15), and who observed at both sentencing hearings (after two (2) jury trials before that same judge) that the statutory mandatory minimum fifteen-year sentence appeared to be well beyond what was "necessary" to fulfill the purposes of sentencing. (ECF No. 129, at 15–18; ECF No. 193, at 15.) Considering those matters and Mr. Brown's conduct since his conviction, this Court cannot easily identify the correctional need for Mr. Brown to remain imprisoned for the nearly ten-year balance of the imposed term of custody. From where the Court sits, Mr. Brown's arguments that the purposes of sentencing under 18 U.S.C. § 3553(a) have by now been fulfilled by the considerable period of custody he has already served carry some substantial force.

Supreme Court's decision in *Rehaif v. United States* interpreting 18 U.S.C. § 922(g)(1), Mr. Brown's offense of conviction. 139 S. Ct. 2191 (2019). There, the Supreme Court held that the "word 'knowingly' applies both to the defendant's conduct and to the defendant's status." *Id.* at 2194. After *Rehaif*, then, the United States must prove that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. At the time of Mr. Brown's conviction, courts did not interpret § 922(g)(1) to require proof that the defendant knew his prohibited status. *See United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). In *In re Sampson*, the Third Circuit noted that the Supreme Court did not explicitly make *Rehaif* retroactive. 954 F.3d 159, 162 (3d Cir. 2020) (per curiam). And because *Rehaif* was a statutory interpretation decision, not a new rule of constitutional law, our Court of Appeals said in *In re Sampson* that it is not a basis for overcoming 28 U.S.C. § 2255(h)'s bar on successive petitions. *See In re Sampson*, 159 F.3d at 161.

The Court concludes that Mr. Brown's *Rehaif* arguments do not provide an "other reason" supporting a sentencing reduction. *Rehaif* interpreted the elements of the substantive offense for which Mr. Brown was convicted. It held that the elements that the United States had to prove at trial to obtain a conviction included a knowledge element that simply was not on the evidentiary table at either of his trials. Therefore, Mr. Brown argues that his sentence should now be reduced to time served, even if he cannot attack his conviction, as it would be unjust to imprison him any longer. While that is an argument based on logic, the reality is that *Rehaif* did not alter the available penalties for violating § 922(g)(1). Thus, Mr. Brown's argument that his conviction is infirm in light of *Rehaif* does not support the next step, namely that an infirm *conviction* would authorize a lesser *sentence*. As a result, relying on *Rehaif* could only form a basis to vacate Mr. Brown's conviction itself, not alter his term of imprisonment. And as the United States correctly notes, 28

9

U.S.C. § 2255 controls a motion to vacate a conviction. (ECF No. 294, at 14–16.) Mr. Brown himself acknowledges that he could not now seek such relief under § 2255. (ECF No. 289, at 32–33.) So the Court cannot circumvent the strictures of § 2255 by relying on § 3582(c)(1)(A).[3]

Mr. Brown's third basis for finding an "extraordinary and compelling" reason for release relies on a series of cases granting sentence reductions to defendants with "stacked" convictions under 18 U.S.C. § 924(c). (ECF No. 289, at 34–37.) "Stacked" § 924(c) convictions arose when the United States brought two (2) § 924(c) counts in the same indictment, then asked the sentencing court to treat a conviction on the second such count as a second § 924(c) conviction, thus triggering a substantially longer mandatory or "stacked" sentence. *See Maumau*, 2020 WL 806121, at *5. Congress cut off this practice by amending § 924(c) in the First Step Act. As amended, the first and second § 924(c) convictions must come at different times in order to trigger the second conviction enhanced penalties—the two (2) convictions can no longer stem from the same indictment. *See id.* But Congress did not make this amendment to § 924(c) retroactive, thus creating a massive disparity in sentences for the same conduct occurring before and after the First Step Act's passage. *See id.* As a result, some courts have concluded that the "other reasons" provision of § 1B1.13 provides an avenue to remedy this gross disparity as to previously imposed sentences. *See id.*; *cf. United States v. Cantu-Rivera*, No. 89-cr-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019).

Mr. Brown argues that the Court should apply the same logic to his Armed Career Criminal

---

[3] Mr. Brown essentially makes an equitable argument that it is unjust that he remain in prison on a fifteen-year mandatory sentence for a conviction that he argues is infirm under *Rehaif*. Since under *In re Sampson* he cannot now challenge that conviction via § 2255, he in essence asks this Court to mitigate that asserted injustice by reducing his sentence to time served using the "other reasons" provisions as to compassionate release. The Court believes that such a workaround runs sufficiently counter to the limitations imposed by § 2255 jurisprudence and *In re Sampson* that in doing so, this Court would be writing them off the books in this circumstance with no limiting principle in doing so. Thus, this Court concludes that doing so would be in reality a resentencing that is outside of this Court's legal authority, no matter how just that outcome might turn out to be. Therefore, this Court's rejection of that argument is not based on the exercise of its discretion. It is instead based on its assessment of the limits of controlling law.

Act sentence under § 924(e), partly based on the Supreme Court's *Rehaif* decision and partly on the sheer length of the mandatory minimum sentence imposed in his case under § 924(e). The Court cannot adopt Mr. Brown's argument on this point. First, as the Court already noted, *Rehaif* itself simply does not provide a basis for altering Mr. Brown's *sentence*, or for using the "other reasons" language to avoid the intended impact of *In re Sampson*. Second, Congress amended § 924(c) when it passed the First Step Act in an effort to reduce or eliminate the gross impact of the "stacking" that had occurred in prior sentencings under that statute. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Thus, the recent § 924(c) "stacking-related" cases are at least implicitly supported by the goals of that legislative action by creating a judicial vehicle to remedy a collateral injustice that arises from the First Step Act's prospective application in "stacking" situations. But the same cannot be said for Mr. Brown's sentence based on § 924(e), which Congress did not amend or otherwise address in a similar fashion in the First Step Act. *See Duncan v. United States*, No. 1:16-cv-1390, 2019 WL 2373515, at *3 (S.D. Ind. June 5, 2019) (noting the First Step Act amended § 924(c) but not § 924(e)).

From where this Court sits, if it were to reduce Mr. Brown's mandatory minimum sentence under the Armed Career Criminal Act for the reasons he advances, it would effectively usurp Congress' legislative role in those regards. This is especially true given the fact that the Armed Career Criminal Act is not a forgotten statute—to this day, it frequently eats up a meaningful chunk of the Supreme Court's limited docket space. *See, e.g., Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 570 U.S. 254 (2013); *Johnson v. United States*, 559 U.S. 113 (2010). So if Congress intended to provide the sort of relief Mr. Brown seeks (or even something close to it), it would have and could have said so, and it has not.

In the end, the Court cannot conclude, as a legal matter, that Mr. Brown's motion presents

11

"other reasons" that amount to "extraordinary and compelling" reasons that would authorize this Court to apply a sentencing reduction.

### C. Mr. Brown's *Holloway* Doctrine Arguments

Mr. Brown's final argument is more of a request. He asks that, if the Court concludes that it is not authorized to provide the reduced sentence he seeks, the Court formally invite the United States to give his sentence a thorough review and potentially agree to vacate his sentence and allow resentencing without the § 924(e) penalty. In essence, Mr. Brown's argument is a variant of the doctrine applied in *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014). In *Holloway*, decided prior to the First Step Act's amendment to § 924(c), the District Judge concluded that he was not authorized to remedy the defendant's "stacked" § 924(c) penalties. But the District Court, noting the defendant's rehabilitation, called upon the prosecutors to ask the Court to vacate one (1) of the § 924(c) convictions in that case, thus unburdening the defendant from the unjust "stacked" conviction sentence. *Id.* at 315–317.

But Mr. Brown's case is different from *Holloway* because he was convicted on a single § 922(g)(1) count with the ACCA sentence imposed by virtue of § 924(e). So the only conviction that the United States could seek to vacate would be on the only count for which Mr. Brown was convicted in this case. And the United States heard Mr. Brown's request to revisit his conviction and declined to do so. (ECF No. 294, at 3–4.) In any event, even if the United States concurred in a resentencing, the Court would nonetheless be bound to impose the same exact fifteen-year mandatory minimum sentence once again. That is because the ACCA sentence Mr. Brown received is the minimum mandated by § 924(e). And while the Court has discretion to sentence below the advisory sentencing guidelines range, it cannot sentence Mr. Brown below the mandatory minimum Congress imposed. So as a practical matter, it would appear that the

*Holloway* approach is inapplicable here, no matter the retrospective assessment of the Court or of the United States as to Mr. Brown's exemplary rehabilitation or the necessity of his serving the nearly next ten (10) years in BOP custody.

### III. CONCLUSION

For the reasons stated, Mr. Brown's Motion to Reduce Sentence (ECF No. 289) is **DENIED** without prejudice.

_____
Mark R. Hornak
Chief United States District Judge

Dated:      July 29, 2020
cc:         All counsel of record via ECF